JUDGE CHIN

195-07/PJG
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
STELIOS B. MARITIME LIMITED
80 Pine Street
New York, NY  10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)





JUN 0 7 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
STELIOS B. MARITIME LIMITED,                          07-CV-

                                    Plaintiff,        **VERIFIED COMPLAINT**

         - against -

ANHUI LIGHT INDUSTRIAL IMP. & EXP. CO.,
LTD. and ANHUI LIGHT INDUSTRIES
INTERNATIONAL CO., LTD.

                                    Defendants.

----------------------------------------------------------------x

         Plaintiff Stelios B. Maritime Limited (hereinafter "Plaintiff" and/or "Stelios B"), by its

attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against the

Defendants Anhui Light Industrial Imp. & Exp. Co., Ltd. (hereinafter "Anhui Light Industrial")

and Anhui Light Industries International Co., Ltd. (hereinafter "Anhui Light Industries")

(collectively "Anhui"), alleges upon information and belief as follows:

         1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

NYDOCS1/281614.1

of charter party.  This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.  Federal jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.    At all times relevant hereto, the Plaintiff Stelios B was and still is a foreign business entity duly organized and existing under the laws of Malta with a business address at 198 Old Bakery Street, Valletta, Malta.

3.    At all times relevant hereto, the Defendant Anhui Light Industrial was and still is a business entity under the laws of China with an office and place of business at Light Industrial Building No. 19, Meishan Road, Hefei, Anhui Providence, Peoples Republic of China, 230022.

4.    At all times relevant hereto, the Defendant Anhui Light Industries was and still is a business entity under the laws of China with an office and place of business at Light Industrial Building No. 19, Meishan Road, Hefei, Anhui Providence, Peoples Republic of China, 230022.

5.    Defendant Anhui Light Industries is a successor in interest to Defendant Anhui Light Industrial, and was formed from the latter entity.

6.    In its capacity as successor in interest, Defendant Anhui Light Industries has taken over and maintains all of the business of its predecessor Anhui Light Industrial, maintains and operates with the same employees, utilizes the same office and production facilities, and as successor in interest, has assumed and is therefore exposed for the obligations and debts of Anhui Light Industrial as a successor in interest and/or alter ego, including but not limited to the obligations under the subject charter party as outlined more fully below.

7.    Further, there has been a disregard of corporate formalities between the two Anhui entities, including but not limited to the predecessor entity Anhui Light Industrial allowing the successor entity Anhui Light Industries to utilize its office building for a period of five years without remuneration.

8.    In addition, there is a commonality of ownership and officers, including but not limited to the union employees of the former being the majority owners of the successor, with the same individual serving in the capacity as the legal representative for both entities, and the new entity Anhui Light Industries acknowledges that it "maintains" all of the export business of the predecessor.

9.    On or about July 7, 2005, Plaintiff Stelios B, in the capacity as owner of the M/V STELIOS B, an ocean-going vessel, entered into a maritime contract of charter party with Anhui under which the latter agreed to charter the M/V STELIOS B for a voyage from Indonesia to China for carriage of coal in bulk.  A copy of the subject charter party is annexed hereto as Exhibit A and incorporated herein by reference (hereinafter the "charter party").

10.  Pursuant to the terms of the subject charter party, Plaintiff Stelios B duly tendered the M/V STELIOS B into service under the charter party and tendered Notice of Readiness on July 11, 2005.

11.  In breach of the terms of the charter party, Anuhi failed to commence loading for a period of one month (i.e. until August 11, 2005) and did not complete loading until September 10, 2005, resulting in accrual of demurrage charges in the total amount of $958,900.30, no part of which has been paid.

12. In addition, and by virtue of the failure to load the cargo on a timely fashion, Plaintiff Stelios B incurred load port "overstay expenses" in the sum of $16,175.00, no part of which has been paid.

13. Anuhi also failed to load the requisite quantity of cargo provided for under the charter party - loading only 32,320 M/T out of required quantity of 38,800, resulting in a claim for deadfreight of $116,883, no part of which has been paid.

14. The vessel sailed from the load port on September 10, 2005 for the designated discharge port of Zhangjigang, China.

15. Upon departure from the load port, the Plaintiff Stelios B issued a freight statement invoice reflecting freight due at $582,972 net of commission.

16. Anuhi has failed or otherwise refused to pay the freight.

17. As a consequence of the failure to pay the freight, dead freight and demurrage incurred at the load port, the Plaintiff declined to issue bills of lading marked "freight prepaid."

18. Upon arrived at the discharge port, Anuhi failed to arrange for the discharge and delivery of the cargo.

19. In view of the foregoing, the Plaintiff Stelios B exercised the lien over the cargo pursuant to Clause 8 of the charter party and on October 1, 2005 accepted Anuhi's repudiatory breach of the contract.

20. As a consequence of the Defendant's failure to arrange for the delivery of the cargo, the Plaintiff Stelios B incurred $161,275 in discharging and storage expenses relating to the lien

on the cargo, and legal fees and disbursements in storing and endeavoring to sell the cargo in sum of $145,315.

21. Further, discharge port demurrage and/or detention was accrued in the total sum of $125,555.

22. Based upon the foregoing, the Plaintiff Stelios B has total claims for damages including freight, deadfreight, load port and discharge port demurrage and expenses relating to the failure to discharge cargo in the total sum of $2,107,075.30.

23. The charter party provides that it is to be governed by English law and all disputes between the parties are to be resolved by arbitration in London.

24. Plaintiff Stelios B specifically reserves its right to arbitrate the substantive matters at issue, and has commenced arbitration, to which Anhui has objected and declined to participate other than to raise an objection to the jurisdiction of the arbitrators.

25. This action is brought in aid of the London arbitration against the Defendants, to compel the Defendant Anhui Light Industries to arbitrate, and to obtain security both for the claims as outlined above and for the additional sums which Plaintiff will incur in the way of anticipated attorney fees and arbitral costs in the arbitration, estimated at $ 190,000, plus interest, estimated at $442,000 through the completion of the arbitration, both of which are recoverable as part of the Plaintiff's claim under English law.

26. Upon information and belief, and after investigation, the defendants cannot be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants have, or will shortly have, assets within this District comprising of, *inter alia*, cash, funds, credits, debts, wire

transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of either of the Defendants (hereinafter, "ASSETS"), including but not limited to ASSETS in either of their names, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein, with the total amount to be attached being $2,739,075.30 in respect to the claim against Defendants Anhui Light Industrial Imp. & Exp. Co., Ltd. and Anhui Light Industries International Co., Ltd.

WHEREFORE, Plaintiff Stelios B prays:

a.      That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged;

b.      That since the Defendants cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendants Anhui Light Industrial Imp. & Exp. Co., Ltd. and Anhui Light Industries International Co., Ltd., up to and including the sum of $2,739,075.30 be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, debts, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of the said Defendants (as identified herein) at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

  c.  That this Court enter an order compelling and directing Defendant Anhui Light Industries International Co., Ltd. to appear and defend the claims of the Plaintiff in London arbitration as a party defendant and charterer, and as successor in interest and alter ego of Defendant Anhui Light Industrial Imp. & Exp. Co., Ltd.;

  d.  That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary, including enforcement of the award and entry of judgment thereon; and,

  e.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
   June 7, 2007

       FREEHILL HOGAN & MAHAR, LLP
       Attorneys for Plaintiff


       By:_____
         Peter J. Gutowski (PG 2200)
         80 Pine Street
         New York, NY 10005
         (212) 425-1900
         (212) 425-1901 fax

## VERIFICATION

State of New York     )
                      ) ss.:
County of New York  )

PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

1.      I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.      The sources of my information and the grounds for my belief are communications, information and documentation provided by our client through their solicitors.

3.      The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                                  _____
                                                         Peter J. Gutowski

Sworn to before me this
7 day of June, 2007

_____
          Notary Public

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010

07-JUL-2005 21:40    HighSmart_Corl.,LTD    24623268         P.01

FROM:                            NUMBER: 2086 551 2841010    2005/07/07 18:19  P002

07-JUL-2005 18:24    HighSmart_Corl.,LTD    24023268         P.01

| 1. Shipbroker<br>A.Hinton Chartering Inc.<br>Address: 1, Macharani str'N – GR 185 36– Piraeus – Greece<br>Phone: +30 210 4280543 – Fax: +30 210 4280340 – E-Mail : alliance@otenet.gr | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: GENCON |
|---|---|
| | 2. Place and date Piraeus 7th July 2005 |
| 3. Owners/Place of business (Cl. 1)<br>"Stelios B. Maritime Ltd" of Valetta / Malta | 4. Charterers/Place of business (Cl. 1) "Anhui Light Industrial Imp. & Exp. Co., Ltd." Of Allo Mansion, 19, Meishan Road, Hefei, Anhui, China 230022 – Phone: +86 551 2820832 – Fax: +86 551 2826319 – E-Mail: dept61@alli.com – Mr. Liu |
| 5. Vessel's name (Cl. 1) m/v "Stelios B." as described in Clause 20.<br>25%/T all told on summer load line in metric tons (abt.) (Cl. 1)<br>Abt 12,30 ts | 6. GT/NT (Cl. 1) 17589/13110 |
| | 7. Present position (Cl. 1)<br>Trading |
| 9. Expected ready to load (abt) (Cl. 1) not before 00:00 hours on<br>10th July 2005/ and not later than 24:00 on 15th July 2005 | |
| 10. Loading port or place (Cl.11) Temancingan/South Kalimantan<br>(Lat: 03deg 12'203" and Long: 116 deg 22' 9"E) 1 safe anchorage<br>where Charterers confirm / guarantee no draft or any other<br>restrictions for the vessel as described hereabove.<br>s also clause 21 & 23. | 11. Discharging port or place(Cl.1)<br>ZhangJiangGang at 1 safe area where Charterers confirm 10.5m brackish water and no other restrictions for the vessel as describe hereabove.<br>See also Clauses 22 & 23. |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl.1)<br>40000 mt of bulk Steam Coal with 10% margin more or less at Owners' option. Stowage Factor of the cargo is 42 cft or upto draft<br>10.5m (brackish water)at discharging port. See also clause 24. | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4) Freight US\$18.50 per mt FIOStowed / Trimmed amount on intaken quantity fully prepaid. See also Clause 25. | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) See also Clause 25. |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6)<br>PT. Bina Kridajasindo – Jl. Tebet Barat Dalam Raya No.22 Jakarta 12810 – Ph: +021 8308958 – Fax: +021 8201441 – PIC Mr. Tariper 62 8111168361 & Mr. Gooti 0811948542 – E-Mail also Cl. 21&23.<br>tariper.robin@yahoo.com | a) Laytime for loading 6000 metric tons per weather working day of 24 consecutive hours, Saturday, Sunday alternatively Friday (where applicable) and holidays included. |
| 18. Agents (loading) (Cl. 6) See also Clauses 21 & 29. | b) Laytime for discharging 15000 metric tons per weather working day of 24 consecutive hours, Saturday Sunday and holidays included. See also Clauses 22 & 23. |
| 19. Agents (discharging) (Cl. 6) See also Clauses 21 & 29. | c) Total laytime for loading and discharging. See also Clauses 21,21,23. |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl.7) Demurrage/Despatch US\$18000/half despatch on working time saved at both ends. see also Clause 26. | 21. Cancelling date (Cl. 9)<br>24:00 hours on 15th July 2005 |
| | 22. General Average to be adjusted at (Cl. 12) London per York-Antwerp Rules<br>See also Clauses 19 & 31. |
| 23. Freight Tax (Cl. 13 (b)) See Clause 27. | 24. Brokerage commission and to whom payable (Cl. 15) See Clause 30. |
| 25. Law and Arbitration (state 19 (a),19 (b) or 19 (c) of Cl. 19; if (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19) Arbitration in London and English law to apply. See also Clause 31.<br>(n) State maximum amount for small claims/shortened arbitration (Cl. 19) Small claim procedure until US\$50,000 to apply – See also Clause 31. | 26. Additional clauses covering special provisions, if agreed Additional clauses 20 upto 41 inclusive, as per attached rider to be fully incorporated in and form part of this Charter Party. |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) (or/for behalf by telephonic authority (as per) | Signature (Charterers)<br>for and on behalf of<br>ANHUI LIGHT INDUSTRIAL IMP. & EXP. CO., LTD.<br>AUTHORIZED SIGNATURE (B-JL) |
|---|---|

STELIOS B MARITIME LTD
MALTA

for and on behalf of
HIGHSMART CORPORATION LIMITED

EXHIBIT
A

07-JUL-2005 21:41    HighSmart_Cort.,LTD    24623268    P.02

**PART II**

Alliance Chartering Inc    **"Gencon" Charter (As Revised 1922, 1976 and 1994)**    serial Imp. & Exp. Co., Ltd.
dot. 7th July 2005

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in    1
Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of    2
deadweight capacity all told on summer load line stated in Box 7, now in position as    3
stated in Box 8 and expected ready to load under this Charter Party about the date    4
indicated in Box 9, and the party mentioned as the Charterers in Box 4 that;    5
The said Vessel shall, as soon as her prior commitments have been completed, proceed    6
to the loading port(s) or place(s) stated in Box 10 ~~or so near thereto~~ as she may safely get    7
and lie always afloat, and there load a full and complete cargo (~~if shipment of deck cargo~~    8
~~agreed same to be at the Charterers' risk and responsibility~~) as stated in Box 12, which    9
    10
the Charterers bind themselves to    11
ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s)    12
stated in Box 11 as ordered on signing Bills of Lading, ~~or so near thereto~~ as she may    13
safely get and lie always afloat, and there deliver the cargo.    14

**Owners' Responsibility Clause**    15
2. The Owners are to be responsible for loss of or damage to the goods or for delay in    16
delivery of the goods only in case the loss, damage or delay has been caused by personal    17
want of due diligence on the part of the Owners or their Manager to make the Vessel in    18
all respects seaworthy and to secure that she is properly manned, equipped and supplied,    19
or by the personal act or default of    20
the Owners or their Manager.    21
And the Owners are not responsible for loss, damage or delay arising from any other    22
cause whatsoever, even from the neglect or default of the Master or crew or some other    23
person employed by the Owners on board or ashore for whose acts they would, but for    24
this Clause, be responsible, or from unseaworthiness of the Vessel on loading or    25
commencement of the voyage or at any time whatsoever.    26
    27

**Deviation Clause**    28
3. The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail    29
without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the    30
purpose of saving life and/or property.    31

**Payment of Freight**    32
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken    33
4. quantity of cargo.    33
(b) *Prepaid*. If according to Box 13 freight is to be paid on shipment, it shall be deemed    34
earned and non-returnable, Vessel and/or cargo lost or not lost.    35
Neither the Owners nor their agents shall be required to sign or endorse bills of lading    36
showing freight prepaid unless the freight due to the Owners has    37
Actually been paid.    38
~~(c) On delivery. If according to Box 13 freight, or part thereof, is payable at destination it~~    39
~~shall not be deemed earned until the cargo is thus delivered. Notwithstanding the~~    40
~~provisions under (a), if freight or part thereof is payable on delivery of the cargo the~~    41
~~Charterers shall have the option of paying the freight~~    42
~~on delivered weight/quantity provided such option is declared before breaking bulk and~~    43
~~the weight/quantity can be ascertained by official weighing machine, joint draft survey~~    44
~~or tally.~~    45
~~Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the~~    46
~~Charterers, if required, at highest current rate of exchange, subject to~~    47
    48

2





07-JUL-2005 21:42     HighSmart_Cort.,LTD     24623268     P.03

Alliance Chartering Inc.                                    m/v Steflior B. / Anhui Light Industrial Imp. & Exp. Co., Ltd.
                                                            dtd: 7th July 2005
                                                                                                49

~~two (2) per cent to cover insurance and other expenses.~~     50

5.   **Loading/Discharging**                                    51
     *(a) Costs/Risks*                                           52
     The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed     53
     and/or secured and taken from the holds and discharged by the Charterers, free of any     54
     risk, liability and expense whatsoever to the Owners.      55
     The Charterers shall provide and lay all dunnage material as required for the proper     56
     stowage and protection of the cargo on board, the Owners allowing the use of all     57
     dunnage available on board. The Charterers shall be responsible for and pay the cost of     58
     removing their dunnage after discharge of the cargo under this Charter Party and time to     59
     count until dunnage has been removed.                      60
     *(b) Cargo Handling Gear*                                  61
     Unless the Vessel is gearless or unless it has been agreed between the parties that the     62
     Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout     63
     the duration of loading/discharging give free use of      64
     the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo     65
     handling gear. All such equipment to be in good working order. Unless caused by     66
     negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear     67
     or motive power - pro rata the total number of cranes/winches required at that time for     68
     the loading/discharging of cargo                           69
     under this Charter Party - shall not count as laytime or time on demurrage.     70
     ~~On request the Owners shall provide free of charge cranemen/winchmen from the crew~~     71
     ~~to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in~~     72
     ~~which latter event shore labourers shall be for the account of the Charterers.~~     73
     Cranemen/winchmen shall be under the Charterers' risk and responsibility and as     74
     stevedores to be deemed as their servants but shall       75
     always work under the supervision of the Master.          76
     *(c) Stevedore Damage*                                     77
     The Charterers shall be responsible for damage (beyond ordinary wear and     78
     tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as     79
     soon as reasonably possible by the Master to the Charterers or their agents and to their     80
     Stevedores, failing which the Charterers shall not be held responsible. The Master shall     81
     endeavour to obtain the Stevedores' written acknowledgement of liability.     82
     The Charterers are obliged to repair any stevedore damage prior to completion of the     83
     voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class     84
     before the Vessel sails from the port where such          85
     damage was caused or found. All additional expenses incurred shall be for the account of     86
     the Charterers and any time lost shall be for the account of and shall be paid to the     87
     Owners by the Charterers at the demurrage rate.           88

     **Laytime**                                               89
6.   * *(a) Separate laytime for loading and discharging*      90
     The cargo shall be loaded within the number of running days/hours as     91
     indicated in Box 16, weather permitting, ~~Sundays and holidays excepted,~~     92
     ~~unless used, in which event time used shall count.~~     93
     The cargo shall be discharged within the number of running days/hours as indicated in     94
     Box 16, ~~weather permitting, Sundays and holidays excepted,~~     95
     ~~unless used, in which event time used shall count.~~     96
     * ~~(b) Total laytime for loading and discharging~~       97

                                                                                                3



07-JUL-2005 21:43    HighSmart_Cort.,LTD    24623268    P.04

Alliance Chartering Int.    m/v Stellos B. / Anhui Light Industrial Imp. & Exp. Co. Ltd.
c/p: 7th July 2005

~~The cargo shall be loaded and discharged within the number of total running days/hours~~    98
~~as indicated in Box 16, weather permitting, Sundays and holidays excepted unless used~~    99
~~in which event time used shall count.~~    100
(c) *Commencement of laytime (loading and discharging)* See Clauses 21,22,23.    101
~~Laytime for loading and discharging shall commence at 13.00 hours, if notice of~~    102
~~readiness is given up to and including 12.00 hours, and at 06.00 hours next working day~~    103
~~if notice given during office hours after 12.00 hours. Notice of readiness at loading port~~    104
~~to be given to the Shippers named in Box 17 or if not named, to the Charterers or their~~    105
~~agents named in Box 18. Notice of readiness at the discharging port to be given to the~~    106
~~Receivers or, if not known, to the Charterers or their agents named in Box 19.~~    107
If the loading/discharging berth is not available on the Vessel's arrival at or off the port    108
of loading/discharging, the Vessel shall be entitled to give notice of readiness within    109
ordinary office hours on arrival there, whether in free pratique    110
or not, whether customs cleared or not. Laytime or time on demurrage shall    111
then count as if she were in berth and in all respects ready for loading/ discharging    112
provided that the Master warrants that she is in fact ready in all respects. Time used in    113
moving from the place of waiting to the loading/ discharging berth shall not count as    114
laytime.    115
If, after inspection, the Vessel is found not to be ready in all respects to load/ discharge    116
time lost after the discovery thereof until the Vessel is again ready to load/discharge    117
shall not count as laytime and only for the number of holds that have failed to pass the    118
inspection.    119
Time used before commencement of laytime shall count.    120
* Indicate alternative (a) or (b) as agreed, in Box 16.    121

    122
**Demurrage** See clause 24.    123-
7.    Demurrage at the loading and discharging port ~~is payable by the Charterers at the rate~~    124
~~stated in Box 20~~ in the manner stated in Box 20 per day or pro rata for any part of a day.    125
Demurrage ~~shall fall due day by day and~~ shall be payable upon receipt of the Owners'    126
invoice.    127
In the event the demurrage is not paid in accordance with the above, the Owners shall    128
give the Charterers 96 running hours written notice to rectify the failure. If the    129
demurrage is not paid at the expiration of this time limit and if the vessel is in or at the    130
loading port, the Owners are entitled at any time to terminate the Charter Party and    131
claim damages for any losses caused thereby.

    132
**Lien Clause**    133
8.    The Owners shall have a lien on the cargo and on all sub-freights payable in respect of    134
the cargo, for freight, deadfreight, demurrage, claims for damages and for all other    135
amounts due under this Charter Party including costs of recovering same. In the B/L to be    136
printed that Owners have a lien on the cargo for non payment of Freight dead freight and/or    137
demurrage accrued at loading port.

    138
**Cancelling Clause**    139
9.    (a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling    140
date indicated in Box 21, the Charterers shall have the option of cancelling this Charter    141
Party.    142
(b) Should the Owners anticipate that, despite the exercise of due diligence,    143
the Vessel will not be ready to load by the cancelling date, they shall notify the    144
Charterers thereof without delay stating the expected date of the Vessel's readiness to    145
load and asking whether the Charterers will exercise their option
of cancelling the Charter Party, or agree to a new cancelling date.

4.





4

Alliance Chartering Inc.    m/v Stellar B. / Anhui Light Industrial Imp. & Exp. Co., Ltd.
c/p: 7th July 2005

Such option must be declared by the Charterers within 48 running hours after the receipt 146
of the Owners' notice. If the Charterers do not exercise their option 147
of cancelling, then this Charter Party shall be deemed to be amended such that 148
the seventh day after the new readiness date stated in the Owners' notification to the 149
Charterers shall be the new cancelling date. 150
The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the 151
Vessel's further delay, the Charterers shall have the option of cancelling the Charter 152
Party as per sub-clause (a) of this Clause. 153

154

**10. Bills of Lading** 155
Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill 156
of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' 157
agents provided written authority has been given by Owners to the agents, a copy of 158
which is to be furnished to the Charterers. The Charterers shall indemnify the Owners 159
against all consequences or liabilities that may arise from the signing of bills of lading as 160
presented to the extent that 161
the terms or contents of such bills of lading impose or result in the imposition of more 162
onerous liabilities upon the Owners than those assumed by the Owners under this 163
Charter Party.

164

**11. Both-to-Blame Collision Clause** 165
If the Vessel comes into collision with another vessel as a result of the negligence of the 166
other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants 167
of the Owners in the navigation or in the management of the Vessel, the owners of the 168
cargo carried hereunder will indemnify the Owners against all loss or liability to the 169
other or non-carrying vessel or her owners in so far as such loss or liability represents 170
loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or 171
payable by the other or non-carrying vessel or her owners to the owners of said cargo 172
and set-off, recouped or recovered by the other or non-carrying vessel 173
or her owners as part of their claim against the carrying Vessel or the Owners. The 174
foregoing provisions shall also apply where the owners, operators or those in charge of 175
any vessel or vessels or objects other than, or in addition to, the colliding vessels or 176
objects are at fault in respect of a collision or contact. 177

General Average and New Jason Clause 178
**12.** General Average shall be adjusted in London unless otherwise agreed in Box 179
22 according to York-Antwerp Rules 1994 1974 and any subsequent modification 180
thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if 181
same have been necessitated through neglect or default of the Owners' servants (see 182
Clause 2). 183
If General Average is to be adjusted in accordance with the law and practice of the 184
United States of America, the following Clause shall apply: "In the event of accident, 185
danger, damage or disaster before or after the commencement of the voyage, resulting 186
from any cause whatsoever, whether due to negligence or 187
not, for which, or for the consequence of which, the Owners are not 188
responsible, by statute, contract or otherwise, the cargo, shippers, consignees 189
or the owners of the cargo shall contribute with the Owners in General Average to the 190
payment of any sacrifices, losses or expenses of a General Average nature that may be 191
made or incurred and shall pay salvage and special charges incurred in respect of the 192
cargo. If a salving vessel is owned or operated by the 193

5




07-JUL-2005 21:45    HighSmart_Cort.,LTD    24623268    P.06

Alliance Chartering Inc.

m/v Stelios B. / Anhui Light Industrial Imp. & Exp. Co. Ltd.
c/p: 7th July 2005

| | |
|---|---|
| Owners, salvage shall be paid for as fully as if the said salving vessel or vessels | 194 |
| belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient | 195 |
| to cover the estimated contribution of the goods and any salvage and special charges | 196 |
| thereon shall, if required, be made by the cargo, shippers, consignees or owners of the | 197 |
| goods to the Owners before delivery.". | 198 |

**13. Taxes and Dues Clause**                                                    199
(a) On Vessel -The Owners shall pay all dues, charges and taxes customarily levied on   200
the Vessel, howsoever the amount thereof may be assessed.                        201
(b) On cargo -The Charterers shall pay all dues, charges, duties and taxes customarily  202
levied on the cargo, howsoever the amount thereof may be assessed.               203
(c) On freight -Unless otherwise agreed in Box 23, taxes levied on the freight shall be 204
for the Charterers' account.                                                     205
                                                                                 206

**Agency**                                                                       207
**14.** In every case the Owners shall appoint their own Agent both at the port of loading and   207
the port of discharge.                                                           208
                                                                                 209

**Brokerage**                                                                    210
**15.** A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and   210
demurrage earned is due to the party mentioned in Box 24.                        211
In case of non-execution 113 of the brokerage on the estimated amount of freight to be  212
paid by the party responsible for such non-execution to the                      213
Brokers as indemnity for the latter's expenses and work. In case of more voyages the   214
amount of indemnity to be agreed.                                                215
                                                                                 216

**General Strike Clause**                                                        217
**16.** (a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo,   217
or any part of it, when the Vessel is ready to proceed from her last port or at any time   218
during the voyage to the port or ports of loading or after her arrival there, the Master or   219
the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if   220
there were no strike or lock-out. Unless the Charterers have given such declaration in   221
writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of   222
cancelling this Charter Party. If part cargo has already been loaded, the Owners must   223
proceed with same, (freight payable on loaded quantity only) having liberty to complete   224
with other cargo on the way for their own account.                               225
(b) If there is a strike or lock-out affecting or preventing the actual discharging   226
of the cargo on or after the Vessel's arrival at or off port of discharge and same has not   227
been settled within 48 hours, the Charterers shall have the option of keeping the Vessel   228
waiting until such strike or lock-out is at an end against paying half demurrage after   229
expiration of the time provided for discharging                                  230
until the strike or lock-out terminates and thereafter full demurrage shall be payable until   231
the completion of discharging, or of ordering the Vessel to a safe port where she can   232
safely discharge without risk of being detained by strike or lock-out. Such orders to be   233
given within 48 hours after the Master or the                                    234
Owners have given notice to the Charterers of the strike or lock-out affecting   235
the discharge. On delivery of the cargo at such port, all conditions of this   236
Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same   237
freight as if she had discharged at the original port of destination,            238
                                                                                 239
                                                                                 240

6





6

07-JUL-2005 21:46    HighSmart_Corl.,,LTD    24623268    P.07

Alliance Chartering Inc.

m/v Stelios B. / Anhui Light Industrial Imp. & Exp. Co., Ltd.
c/p: 7ᵗʰ July 2005

except that if the distance to the substituted port exceeds 100 nautical miles,    241
the freight on the cargo delivered at the substituted port to be increased in proportion.    242
(c) Except for the obligations described above, neither the Charterers nor the Owners    243
shall be responsible for the consequences of any strikes or lock-outs preventing or    244
affecting the actual loading or discharging of the cargo.    245
    246

War Risks ("Voywar ~~1993~~ 2004")to apply.    247

17.    (1)    ~~For the purpose of this Clause, the words:~~    248

~~(a) The "Owners" shall include the shipowners, bareboat charterers, disponent~~    249
~~owners, managers or other operators who are charged with the management of the~~    250
~~Vessel, and the Master; and~~    251
~~(b) "War Risks" shall include any war (whether actual or threatened), act of war,~~    252
~~civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the~~    253
~~laying of mines (whether actual or reported), acts of piracy, acts of terrorism, acts of~~    254
~~hostility or malicious damage, blockades~~    255
~~(whether imposed against all Vessels or imposed selectively against Vessels of~~    256
~~certain flags or ownership, or against certain cargoes or crews~~    257
~~or otherwise howsoever), by any person, body, terrorist or political group,~~    258
~~or the Government of any state whatsoever, which, in the reasonable judgement of~~    259
~~the Master and/or the Owners, may be dangerous or are~~    260
~~likely to be or to become dangerous to the Vessel, her cargo, crew or other persons~~    261
~~on board the Vessel.~~    262

~~(2)    If at any time before the Vessel commences loading, it appears that, in the~~    263
~~reasonable judgement of the Master and/or the Owners, performance of~~    264
~~the Contract of Carriage, or any part of it, may expose, or is likely to expose,~~    265
~~the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; the~~    266
~~Owners may give notice to the Charterers cancelling this Contract of Carriage, or~~    267
~~may refuse to perform such part of it as may expose, or may be likely to expose, the~~    268
~~Vessel, her cargo, crew or other persons on board the Vessel to War Risks;~~    269
~~provided always that if this Contract of Carriage provides that loading or~~    270
~~discharging is to take place within a range of ports, and at the port or ports~~    271
~~nominated by the Charterers the Vessel, her cargo, crew or other persons on board~~    272
~~the Vessel may be exposed, or may be likely to be exposed, to War Risks, the~~    273
~~Owners shall first require the Charterers to nominate any other safe port which lies~~    274
~~within the range for loading or discharging, and may only cancel this Contract of~~    275
~~Carriage if the Charterers shall not have nominated such safe port or ports within 48~~    276
~~hours of receipt of notice of such requirement.~~    277

~~(3)    The Owners shall not be required to continue to load cargo for any voyage,~~    278
~~or to sign Bills of Lading for any port or place, or to proceed or continue on any~~    279
~~voyage, or on any part thereof, or to proceed through any canal or waterway, or to~~    280
~~proceed to or remain at any port or place whatsoever, where it appears, either after~~    281
~~the loading of the cargo commences or at~~    282
~~any stage of the voyage thereafter before the discharge of the cargo is completed,~~    283
~~that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her~~    284
~~cargo (or any part thereof), crew or other persons~~    285
~~on board the Vessel (or any one or more of them) may be, or are likely to be,~~    286
~~exposed to War Risks. If it should so appear, the Owners may by notice request the~~    287
~~Charterers to nominate a safe port for the discharge of the cargo or any part thereof,~~    288
~~and if within 48 hours of the receipt of such~~    289
    290

STELIOS B. MARITIME LTD
MALTA

7



07-JUL-2005 21:47    HighSmart_Cort.,LTD    24623268    P.08

Alliance Chartering Inc.    m/v Reillov B. / Anhui Light Industrial Impt. & Exp. Co., Ltd
cp: 1st July 2005

notice, the Charterers shall not have nominated such a port, the Owners may | 291
discharge the cargo at any safe port of their choice (including the port of loading) in | 292
complete fulfilment of the Contract of Carriage. The Owners shall be entitled to | 293
recover from the Charterers the extra expenses of such discharge and, if the | 294
discharge takes place at any port other than the loading port, to receive the full | 295
| 296
freight as though the cargo had been | 297
carried to the discharging port, and if the extra distance exceeds 100 miles, to | 298
additional freight which shall be the same percentage of the freight contracted for as | 299
the percentage which the extra distance represents to | 300
the distance of the normal and customary route, the Owners having a lien on the | 301
cargo for such expenses and freight. | 302
(4) If at any stage of the voyage after the loading of the cargo commences, it | 303
appears that, in the reasonable judgement of the Master and/or the | 304
Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be or | 305
are likely to be, exposed to War Risks on any part of the route (including any canal | 306
or waterway) which is normally and customarily used | 307
in a voyage of the nature contracted for, and there is another longer route | 308
to the discharging port, the Owners shall give notice to the Charterers that this route | 309
will be taken. In this event the Owners shall be entitled, if the total extra distance | 310
exceeds 100 miles, to additional freight which shall be the same percentage of the | 311
freight contracted for as the percentage which the extra distance represents to the | 312
distance of the normal and customary | 313
route. | 314
(5) The Vessel shall have liberty:— | 315
(a) to comply with all orders, directions, recommendations or advice as to departure, | 316
arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of | 317
cargo, delivery or in any way whatsoever which are given by the Government of the | 318
Nation under whose flag the Vessel sails, or other Government to whose laws the | 319
Owners are subject, or any other Government which so requires, or any body or | 320
group acting with the power to compel compliance with their orders or directions; | 321
(b) to comply with the orders, directions or recommendations of any war risk | 322
underwriters who have the authority to give the same under the terms of the war | 323
risks insurance; | 324
(c) to comply with the terms of any resolution of the Security Council of the United | 325
Nations, any directives of the European Community, the effective orders of any | 326
other Supranational body which has the right to issue and | 327
give the same, and with national laws aimed at enforcing the same to which the | 328
Owners are subject, and to obey the orders and directions of those who are charged | 329
with their enforcement; | 330
(d) to discharge at any other port any cargo or part thereof which may render the | 331
Vessel liable to confiscation as a contraband carrier; | 332
(e) to call at any other port to change the crew or any part thereof or other persons | 333
on board the Vessel when there is reason to believe that they may be subject to | 334
internment, imprisonment or other sanctions; | 335
(f) where cargo has not been loaded or has been discharged by the | 336
Owners under any provision of this Clause, to load other cargo for the Owners' | 337
own benefit and carry it to any other port or ports whatsoever, whether backwards | 338
or forwards or in a contrary direction to the ordinary or customary route. | 339
(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this | 340
| 341





8

Alliance Chartering Inc.                                    m/v Stelios B. / Anipal Light Industrial Imp. & Exp. Co., Ltd.
                                                                          c/p 7th July 2005

~~Clause anything in done or not done, such shall not be deemed to be a deviation, but~~   342
~~shall be considered as due fulfilment of the Contract of Carriage~~   343
                                                                          344

345

**General Ice Clause**                                                    346

18. *Port of loading*                                                     

(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is   347
ready to proceed from her last port or at any time during the voyage or on the Vessel's   348
arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being   349
frozen in is at liberty to leave without cargo, and this Charter Party shall be null and   350
void.                                                                     351

(b) If during loading the Master, for fear of the Vessel being frozen in, deems it   352
advisable to leave, he has liberty to do so with what cargo he has on board and to   353
proceed to any other port or ports with option of completing cargo for the Owners'   354
benefit for any port or ports including port of discharge. Any part   355
cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's   356
expense but against payment of freight, provided that no extra expenses be thereby   357
caused to the Charterers, freight being paid on quantity delivered (in proportion if   358
lumpsum), all other conditions as per this Charter Party.   359

(c) In case of more than one loading port, and if one or more of the ports are closed by   360
ice, the Master or the Owners to be at liberty either to load the part cargo at the open port   361
and fill up elsewhere for their own account as under section (b) or to declare the Charter   362
Party null and void unless the Charterers agree to load full cargo at the open port.   363

*Port of discharge*                                                       364

(a) Should ice prevent the Vessel from reaching port of discharge the   365
Charterers shall have the option of keeping the Vessel waiting until the re- opening of   366
navigation and paying demurrage or of ordering the Vessel to a safe and immediately   367
accessible port where she can safely discharge without risk of detention by ice. Such   368
orders to be given within 48 hours after the Master or the Owners have given notice to   369
the Charterers of the impossibility of reaching port of destination.   370

(b) If during discharging the Master for fear of the Vessel being frozen in deems   371
it advisable to leave, he has liberty to do so with what cargo he has on board and   372
to proceed to the nearest accessible port where she can safely discharge.   373

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply   374
and the Vessel shall receive the same freight as if she had discharged at the original port   375
of destination, except that if the distance of the substituted port to be increased in   376
miles, the freight on the cargo delivered at the substituted port to be increased in   377
proportion.                                                               378

379

**Law and Arbitration**                                                   380

(a) This Charter Party shall be governed by and construed in accordance with English   381
law and any dispute arising out of this Charter Party shall be referred to arbitration in   
London in accordance with the Arbitration Acts 1950 and 1979 or any statutory   382

19. modification or re-enactment thereof for the time being in force. Unless the parties agree   383
upon a sole arbitrator, one arbitrator shall be   384
appointed by each party and the arbitrators so appointed shall appoint a third arbitrator,   385
the decision of the three-man tribunal thus constituted or any two of them, shall be final,   386
On the receipt by one party of the nomination in writing of   387

388

389

390

9





9

Alliance Chartering Inc.

| | |
|---|---|
| the other party's arbitrator, that party shall appoint their arbitrator within | 391 |
| fourteen days, failing which the decision of the single arbitrator appointed shall be final. | 392 |
| For disputes where the total amount claimed by either party does not exceed | 393 |
| the amount stated in Box 25** the arbitration shall be conducted in accordance with the | 394 |
| Small Claims Procedure of the London Maritime Arbitrators | 395 |
| Association. | 396 |
| (b) This Charter Party shall be governed by and construed in accordance with Title 9 of | 397 |
| the United States Code and the Maritime Law of the United States and should any | 398 |
| dispute arise out of this Charter Party, the matter in dispute shall be referred to three | 399 |
| persons at New York, one to be appointed by each of the parties hereto, and the third by | 400 |
| the two so chosen; their decision or that of any two of them shall be final, and for | 401 |
| purpose of enforcing any award, this agreement may be made a rule of the Court. The | 402 |
| proceedings shall be conducted in accordance with the rules of the Society of Maritime | 403 |
| Arbitrators, Inc. | 404 |
| For disputes where the total amount claimed by either party does not exceed | 405 |
| the amount stated in Box 25** the arbitration shall be conducted in accordance with the | 406 |
| Shortened Arbitration Procedure of the Society of Maritime Arbitrators Inc. | 407 |
| (c) Any dispute arising out of this Charter Party shall be referred to arbitration at the | 408 |
| place indicated in Box 25, subject to the procedures applicable there. The laws of the | 409 |
| place indicated in Box 25 shall govern this Charter Party. | 410 |
| (d) If Box 25 in Part 1 is not filled in, sub-clause (a) of this Clause shall apply. | 411 |
| *(a), (6) and (c) are alternatives; indicate alternative agreed in Box 25.* | 412 |
| *Where no figure is supplied in Box 25 in Part 1, this provision only shall be void but the* | 413 |
| *other provisions of this Clause shall have full force and remain in effect.* | 414 |
| | 415 |
| | 416 |
| | 417 |





Alliance Chartering Inc.

Additional Clauses to the m/v "Stelios B." - "Anhui Light Industrial Imp. & Exp. Co., Ltd."
c/p dated: 7th July 2005

It is today 7th July 2005, mutually agreed between the Owners of the m/v "Stelios B" Messrs "Stelios B.
Maritime Ltd." of Valetta/Malta and the Charterers Messrs "Anhui Light Industrial Imp. & Exp. Co., Ltd."
of China, that the subject vessel has been cleaned fixed for the subject voyage under the following terms and
conditions:

Charterers
Messrs "Anhui Light Industrial Imp. & Exp. Co., Ltd." Of Alic Mansion, 19, Meishan Road, Hefei, Anhui,
China 230022 . Phone: +86 551 2829832 – Fax: +86 551 2826319 – E-Mail: dept61@alic.cn – Mr. Liu

Shippers
Messrs "PT. Bina Kridajasindo – Jl. Tebet Barat Dalam Raya No.22 – Jakarta 12810 – Ph: +021 8309958 –
Fax: +021 8291831 – P.I.C. Mr. Taripar 62 811186361 & Mr. Gonti 0811943542 – E-Mail: taripar-
robin@yahoo.com"

Clause 20 Vessel's description
m/v "Stelios B." ex Wadi Alnakheel – Malta flag – DWT:45112,30 on 11,40m – Built 1985 – 5Ho/5Ha –
Cranes 4x15 t – TPC:54,31t – G/B: 2052844/1944664 – Loa: 195,47m – Beam: 32,234m – GRTNRT:
27589/15110 – Ha Dims. 19,20x15,20 (all) – fitted with (4) Mechanical Grabs of abt 6 cbm each – Classed
with B.V. (Highest) – all details about.

Clause 21 Loading Port & Conditions
1.  Vessel to appear for loading not earlier than 00:00 hours on 10th July 2005 and not later than
    24:00 hours on 15th July 2005.
2.  Pemancingan/South Kalimantan (Lat: 03deg 12' 20S" and Long: 116 deg 22' 9"E) 1 safe
    anchorage where Charterers confirm / guarantee no draft or any other restrictions for the vessel as
    described hereabove.
3.  Any time waiting for berth to count as loading time.
4.  Cargo to be loaded, stowed, grab trimmed free of expense and risk to the vessel at an average
    rate of 6000 metric tons per weather working day of 24 consecutive hours, Saturday, Sunday
    alternatively Friday (where applicable) and holidays included.
5.  The Owner / Master of the vessel to provide free use of all cranes to Shippers' Stevedores.
    Shippers to supply shore labour to perform, operate the vessel's cranes at their expense. The crane
    operators to work under the supervision of the Master.
6.  Owners / Master to give 3 days plus 48/24 hours notice to Charterers and to agents. Notice of
    readiness to load shall be rendered by the vessel to the Shipper or Charterers via their nominated
    agents after arrival at the usual waiting anchorage of the loading port, whether in berth or not,
    whether in port or not, whether in free pratique or not, whether in customs clearance or not, any
    time from Monday through Sunday including holidays.
7.  N.O.R. can be given any time day or night, any day working or not, by cable/VHF W/W/W/W at
    both ends, at loading, even before laydays in which case only actual time used for operations, if
    any, to count.
8.  If vessel cannot enter/reach loading berth or port or anchorage on account of congestion: Master
    may tender notice of readiness from place of stoppage assigned by harbour Master by cables /
    telex / fax / e-mail or written notice, whether is port or not, whether in berth or not. Whether in
    free pratique or not, whether entered customs clearance or not.
9.  Laytime to commence 6 hours after N.O.R. has been tendered, unless loading sooner commences,
    in which case actual time used to count.

11





11

Alliance Chartering Inc.                                          m/v Regling A. / Anhui Light Industrial Imp. & Exp. Co., Ltd.
                                                                                            c/p: 7th July 2005

10. Laytime shall end upon completion of loading and draft survey and all clearance documents are on board.
11. Laytime to count w/w/w/w.
12. Exact bill of lading quantity to be determined as per draft survey.
13. Draft survey to be done by the Master or Vessel's P&I local representative in the presence of Shippers' representatives/surveyors and time to count as laytime. Charterers/Shippers to pay for their own surveyor's fees only.
14. Berth expenses related to security to be always for Charterers' account.
15. If Vessel arrives at loading port and the cargo is not ready for loading, or Stevedores refuse to load because of Shippers/Receivers' fault, all time lost to be considered as detention and be paid by the demurrage rate. Such detention to be paid by the Charterers ever day in arrears until vessel commences loading operation and laytime starts to count.
16. Agents at Loading port are:
    Head Agents in Jakarta: PT.Barim Bahari Sentosa — Barito. 1. / No.1. street.— South Jakarta.—
    Phone: +62 70858821 — Fax: +62 21 7352041 — E-Mail: bbs@indo.net.id & bbs@uninet.net.id
    Local Agents: PT. Barim Bahari Sentosa — Raya Siagen Km5 No.1, street — Kota Bary — South Kalimantan Phone: +62 518 7701762 — Fax: +62 518 22350 — E-Mail: billiton2003@yahoo.com

Clause 22 Discharging Port & Conditions
1. ZhangJiangGang at 1gabaaaa where Charterers confirm 10.5m brackish water and no other restrictions for the vessel as described hereabove.
2. Charterers have the right to use a second/subsequent berth(s) provided all shiftings between berths to be for Charterers' expense and time to count as laytime, except for shifting from anchorage to berth and vice versa which not to count as laytime
3. Cargo to be discharged, free of expense and risk to the vessel at an average rate of 15000 metric tons per weather working day of 24 consecutive hours, Saturday Sunday and holidays included.
4. Vessels to provide cranes for discharging of cargo free of expense to Charterer / Receivers. Receivers to supply shore labour to perform, operate the vessel's cranes at their expense. The crane operators to work under the supervision of the master. However, if required, the vessel shall hoist on board, shift from hold to hold and put on shore again a bulldozer or front end loader free of expense to Charterers / Receivers always weight of such material is within maximum SWL of cranes and be fitted with rubber wheels.
5. Time waiting for berth to count as discharging time.
6. Owners / Master to give 5/3 days plus 48/24 hours notice to Charterers and to agents. Notice of readiness to discharge shall be rendered by the vessel to the Receivers or Charterers via their nominated agents after arrival at the usual waiting anchorage of the discharging port, whether in berth or not, whether in port or not, whether in free pratique or not, whether in customs clearance or not, any time from Monday through Sunday including holidays.
7. If vessel cannot enter discharging berth or port on account of congestion: Master may tender notice of readiness from place of stoppage assigned by harbour Master by cables / telex / fax / e-mail or written notice, whether in port or not, whether in berth or not. Whether in free pratique or not, whether entered customs clearance or not.
8. Laytime to commence 6 hours after N.O.R. has been tendered, unless loading sooner commences, in which case actual time used to count.
9. Laytime shall end upon completion of discharging and draft survey and all clearance documents are on board.
10. Laytime to count w/w/w/w
11. Discharged cargo quantity to be determined as per draft survey.
12. Draft survey to be done by the Master or Vessel's P&I local representative in the presence of Receivers' representatives/surveyors and time to count as laytime. Charterers/Receivers to pay for their own surveyor's fees only
13. Berth expenses related to security to be always for Charterers' account.

12



07-JUL-2005 21:51    HighSmart_Cort.,LTD    24623268    P.13

Alliance Chartering Inc.                   m/v Bellor B. / Anhui Links Industrial Imp. & Exp. Co., Ltd.
c/p 7th July 2005

14. At discharging port, office hours to be from 08:00 hours till 17:00 hours – Saturday through Thursday.
15. Agents at Discharging port are: Zhangjiagang United Int. Ocean Shipping Agency Ltd. – Gangqu Town Zhangjingang City Jiangsu china – Phone: +86 512 58336510 – Fax: +86 512 58336520 – Telx: 363818 UNISC CN – Zip Code: 215633 – P.I.C. Ms. Liu Xiu Qin

**Clause 23 Loading & Discharging**
1. Laytime between loading and discharging to be non reversible and two Time Sheets to be used.
2. Charterers and/or Shippers/Receivers, may have the right to shift the vessel to a 2nd berth, at their own expenses and time to count as laytime.
3. Vessel to be left in seaworthy trim to master's and port authorities' satisfaction for shifting between the load / discharge berth(s) and / or anchorage (s) and load / Discharge port(s)
4. Any Time lost actually lost for through lack of vessel's power, breakdown or inefficiency (except stevedores') / of any equipment or any neglect or fault of the vessel, its owners, master and crew or their agent affecting the loading or discharging operations shall not count as laytime on demurrage. Any time lost due to ballasting or deballasting not to count as laytime.
5. In the event of dead freight being due, laytime shall be calculated on the basis of tonnage for which the freight is paid and not the bill of lading quantity.
6. Cargo to be delivered / redelivered by draft survey time of which to count as laytime.
7. Vessel to provide sufficient lights for night work as on board and rope slings as on board for loading / discharging free of expense to the Charterer.
8. 1st opening and last closing of hatches at load / discharge port to be performed by crew, provided local regulations permit in Owner's time, all other opening/closing of hatches to be performed by the stevedores and time to count as laytime.
9. Rigging of cranes to be done by vessel's crew, if permitted by shore regulations.
10. Overtime to be for party ordering same, overtime for officers and crew to be for Owners account unless ordered by port authority in which case to be for Charterers/Shippers'/Receivers' account.
11. The cargo is to be loaded in holds only. No cargo is to be loaded in any area not easily accessible to Shippers and/or Receivers' means, but should any cargo be loaded in any such areas than any extra expenses and / or time incurred at the discharge port, than any extra expenses and / or time incurred at the discharge port to be for owners' account. Any extra trimming necessary, beyond customary spot or trimming, any extra cost and / or time over and above that for normal grab discharge incurred on account of vessel's construction to be for owner's account.
12. Owners are not allowed to load any other cargo as part cargo
13. Damage to Charterers' shore equipment due to the vessel's fault during vessel's discharge shall be reported and signed for by the Master within 24 hours of the occurrence of the event.
14. Any damages to the vessel by the Stevedores shall be settled directly between Owners and Stevedores. Charterers to endeavour to assist Owners in settlement of Stevedore damage and to be ultimately responsible.
15. Owner undertakes to provide the agents at loading and discharging ports with sufficient funds, prior to vessel's arrival to cover vessel's disbursements.

**Clause 24 Cargo**
40000 mt of bulk Steam Coal with 10% margin more or less at Owners' option. Stowage Factor of the cargo is 42 cft or upto draft 10,5m (brackish water)at discharging port

**Clause 25 Freight**
Freight US$18.50 per mt FIOStowed/Trimmed/Spout on intaken quantity, 100% less commissions only plus demurrage accrued at loading port which to be considered as part of the freight, to be paid to Owners' nominated Bank account 3 banking days after completion of loading and signing but before releasing of bills of lading either marked "freight payable as per c/p". Freight to be deemed earned on shipment discountless and not returnable ship and/or cargo lost or not lost. Irrespective to time limit for payment of freight same to

13





13

07-JUL-2005 21:52    HighSnart_Cort.,LTD    24623268    P.14

Alliance Chartering Inc.                          m/v Redline B. / Anhui Light Industrial Imp. & Exp. Co., Ltd.
                                                                        c/p 7th July 2005

have been received by the Owners before breaking bulk. Freight to be remitted to Owners' bankers as follows:

Payable to:
HSBC Bank - Akti Miaouli Branch - Piraeus - Greece - Swift: "MIDLGRAA"
I.B.A.N.: GR84 0710 0010 0000 0101 0669 071 f/o "A.B.Maritime Inc."
Corr.Bank in USA "HSBC Bank USA - Swift: 'MRMDUS33'

**Clause 26 Demurrage/Despatch**
1. Demurrage agreed US$18000/half despatch on working time saved at both ends.
2. If the Charterers fail to meet the specified loading/discharging requirements, demurrage shall be payable by the Charterers to the Owners for time lost after expiration of allowable laytime. At the rate provided above.
3. If vessel completes loading/discharging operations earlier than the laytime allowed, despatch shall be payable by the Owners to the Charterers for any working time saved.
4. Demurrage accrued at loading port shall be paid upon completion of loading together with the freight, being considered as part of it, and upon Owners' fax or mail presentation their freight and demurrage invoice accompanied by S.O.F. and I./T calculations.
5. Demurrage accrued at discharging port shall be paid within 15 days after completion of discharging and upon Owners' fax or mail presentation their freight and demurrage invoice accompanied by S.O.F. and I./T calculations.
6. In case vessel is detained at loading/discharging port due to reason of non-readiness of cargo or cargo documents / non payment of cargo dues/or any such reasons which lead to genuine faults from Receivers / Charterers ends, then detention will be applicable same rate as of demurrage rate.

**Clause 27 Taxes & Extra Insurance**
1. Any taxes / dues / wharfages / charges / levies / tallies calculated on cargo to be for Charterers account at both ends.
2. Any taxes / dues / wharfages / charges / levies / tallies calculated on vessel / freight to be for Owners' account at both ends.
3. Vessel free of any extra Insurance due to her age / flag / ownership / class

**Clause 28 Bills of Lading**
1. Bills of Lading to be signed by the Master.
2. If Charterers wish to release the B/L, marked "freight payable as per c/p" prior Owners having received the freight and if Owners are agreeable to this, then the B/L itself have printed on it's face that "Owners have a lien on the cargo for non payment of freight/dead freight and demurrage"
3. If Charterers wish to issue "freight prepaid" B/L, same will be released only after Owners have actually received Freight and Demurrage accrued at loading port.
4. Congen bill 94' to be used only. No Liner/No through/No transhipment/No combined transport B/L no way bills to be ever used during the currency of this charter party.
5. Bill of Lading to be issued in strict conformity with the mate's receipts.
6. Charterers to fax Owners both sides of the Bill of Lading they are to use, prior issuance for Owners' approval.
7. Charterers to issue only one B/L as cargo is homogenous.
8. Owners/Master to discharge the cargo without the presentation of the original bill of lading against a Letter of Indemnity in accordance with vessel's P&I Club wording and signed by the Charterers only.

14





14

Alliance Chartering Inc.                              m/v Bailos B. / Anlsi Light Industrial Inc. & Exp. Co. Ltd
                                                                                  dtd: 7th July 2005

**Clause 29 Agents**
Charterers' agents at loading port, provided competitive in their D/A quote. If not, then Owners to appoint their own agents. If Charterers insist on appointing their own, then Charterers to pay the differentials.

**Clause 30 Commissions**
Total commission 2,5% earned on freight, dead freight and demurrage is deductible from freight and paid by the Charterers. Plus 1.25% to Alliance Chartering Inc. payable by the Owners.

**Clause 31 Arbitration & General Average**
Arbitration in London and English law to apply. All disputes arising under this contract which cannot be amicably resolved shall be referred to arbitration in London, unless the parties agree upon a sole arbitrator, one to be appointed by each of the parties who will have the power to appoint an umpire if they disagree. The arbitrators and the umpire shall be members of the London Maritime Arbitrators' Association. The contract is governed by English Law and there shall apply to arbitrators' proceedings under this clause terms of the London Maritime Arbitrators' Association current at the time when the Arbitration proceedings are commenced. Small claim procedure upto US$50,000 to apply.

**Clause 32 Attached Clauses**
New Jason Clause P & I Bunkering Clause, New Both to Blame Collision Clause, General Clause Paramount, General Average Clause and Chamber of Shipping War risk Clause 2004, as attached deemed to be incorporated in this charter Party, and included in any Bills of Lading hereunder.

**Clause 33. Cleanliness & Caring**
Ship owners shall take adequate precautions to ensure proper cleaning of the holds of the vessel prior to the commencement of loading of the material.  Deep tanks, tunnels and all other vulnerable, parts within the vessel's holds to be properly protected against damage by stevedores ' mechanical grabs failing which owners to be responsible for any and all consequences.

**Clause 34 War Cancellation**
In the event of outbreak or existence of war during Charter Party between any of the following nations USA, Russia, China, India, then either owners or charterers may cancel this charter party.

Basic War Risk insurance premium on vessel's hull & machinery insured value and crew war bonus prevailing at the time of fixture of the performing vessel to be for Owner's account If the war/warlike zone have been declared by vessel's underwriters and/or P&I Club after cargo has already been loaded on board; subsequently, the war risk clause of Owners P&I Club to apply and Charterers are fully responsible to pay for all additional war risk premium upon demand of vessel's underwriters and/or P&I Club with all risks/consequences to be for Charterers' account, including blocking and trapping as well as war crew bonuses, not exceeding Lloyd's of London respectively Hellenic War Mutual and Crew's collective agreement and always in line with the terms and conditions of the Owners' cover.

**Clause 35 Boycott Clause**
Owners warrant that the vessel (and her flag) is eligible for trading at all ports and places specified for the voyage and at all times shall have on board all certificates, records and other documents required for such trading.

**Clause 36 New Both to Blame Collision Clause**
If the Liability for any collision in which the vessel in involved while performing the Bills of Lading falls to be determined in accordance with the laws of Singapore, and the following clause shall apply.
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the owners in the navigation or in the management of the vessel, the owners of the cargo carried hereunder will indemnify the owners against all




15

05 21:54      HighSmart_Cort.,LTD        24623268            P.16

Alliance Chartering Inc.                              m/v Stelios B. / Anhui Light Industrial Imp. A Exp. Co. Ltd.
                                                                    cfp. 7th July 2005

loss or liability to the other or non carrying ship or her owners in so far as such loss of liability represents loss
of, or damage to, any claim whatsoever of the owners of the said goods, paid or payable by the other or non
carrying ship or her owners to the owners of said goods and set off recouped or recovered by the other or non
carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners.
The foregoing provisions shall also apply where the Owners, Operators or those in charge of any vessel or
vessels or objects other than, in addition to, the colliding ships or objects are at fault in respect to a collision
or contact.

## Clause 37 Protection & Indemnity bunkering Clause
The vessel in addition to all other liberties shall have liberty as part of the contract voyage and at any stage
thereof to proceed to any port or ports whatsoever whether such ports are on and on the direct and/or
customary route or routes to the ports of loading or discharge named in this charter and there take oil bunkers
in any quantity in the discretion of owners even to the full capacity of fuel tanks, deep tanks and any other
compartment in which oil can be carried whether such amount is or is not required for charterer's voyage.

## Clause 38. General Paramount clause
The bill(s) of Lading shall have effect subject to the provisions of any legislation relating to the Carriage of
goods by sea which incorporates the rules relating to the Bills o Lading contained in the international
convention, dated Brussels 25th August 1974 and which is compulsory applicable to the contract of carriage
herein but nothing herein contained shall be deemed surrender by the carrier of any of its rights or immunities
or an increase of any of its responsibilities or liabilities thereunder. If any term of this Bill of Lading be
repugnant to any extent to any legislation by this clause incorporated, such term shall be void to that extent
but no further. Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory
protection or exception from, or limitation of, liability

## Clause 39. ISM & ISPS Clause
### ISM
From the date of coming into force of the International Safety Management (ISM) Code in relation to the
Vessel and thereafter during the currency of this Charterparty, the Owners shall procure that both the Vessel
and 'the Company' (as defined by the ISM Code) shall comply with the requirements of the ISM Code.
Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety
Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charterparty, loss, damage, expense or delay caused by failure on the
part of the Owners or 'the Company' to comply with the ISM Code shall be for the Owners' account.

### ISPS
(A) (i) From the date of coming into force of the International Code for the Security of Ships and of Port
Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel, the
Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply
with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners
shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship
Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact
details of the Company Security Officer (CSO).
   (ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding
consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the
requirements of the ISPS Code or this Clause shall be for the Owners' account.
(B) (i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full
style contact details and any other information the Owners require to comply with the ISPS Code.
   (ii) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential
loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers'
account and any delay caused by such failure shall be compensated at the demurrage rate.

16

STELIOS B. MARITIME LTD
M/N, TA



16

07-JUL-2005 21:55    HighSmart_Cort.,LTD    24823268    P.17
FROM:    NUMBER: 0086 551 2841010    2005/07/07 18:19   P008

07-JUL-2005 18:13    HighSmart_Cort.,LTD    24823268    P.08

Alliance Chartering Inc.    M/V Xinfeng B  ( Anhui Light Industry Imp. & Exp. Co., Ltd. )
Cl. 7, July 2005

(C) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if the Vessel is on laytime or demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by the Charterers at the demurrage rate.

(D) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(E) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

Clause 40 – Documentation
The Owners shall carry on board and make available for inspection as and when required by Charterers and/or authorities any documentation relating to the Vessel that may be required to permit the Vessel to trade within the agreed load/bunkering/discharge ports, including, but not limited to certificates of financial responsibility for oil pollution, P&I Cover, Valid International tonnage/registry/gear certificates.

Clause 41 – Confidentiality Clause
All negotiations and fixture to be kept strictly private and confidential by both parties and not to be reported to any person or organization.

The Owners

The Charterers

For and on behalf of
ANHUI LIGHT INDUSTRIAL IMP.& EXP. CO., LTD.
AUTHORIZED SIGNATURE  (6-30)

For and on behalf of
HIGHSMART CORPORATION LIMITED
高 越 茂 集 团 公 司
Authorized Signature(s)

17